UNITED STATES DISTRICT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

KARLA VICENTE,

                    **Plaintiff,**

        -against-

COMPASS GROUP USA, INC d/b/a
RESTAURANT ASSOCIATES d/b/a
FLIK HOSPITALITY

                   **Defendant.**
--------------------------------------------------------X

**COMPLAINT**

Docket No.: 22-CV-8585

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Karla Vicente ("PLAINTIFF" or "MS. VICENTE"), by and through her attorneys, Risman & Risman, P.C. and Brustein Law LLC, as and for her Complaint in this action against Defendant Compass Group USA, Inc d/b/a Restaurant Associates ("RA") d/b/a FLIK Hospitality ("FLIK") (hereinafter, collectively referred to as "DEFENDANT" or COMPASS GROUP"), respectfully allege as follows:

## INTRODUCTION

1.      This action arises from the hostile work environment, unequal treatment, sexual harassment, sex and disability discrimination, and retaliation that the PLAINTIFF endured as an employee of COMPASS GROUP in violation of New York Executive Law § 296 et seq. (the "New York State Human Rights Law" or ("NYSHRL") and New York City Administrative Code § 8-101 et seq. (the "New York City Human Rights Law" or "NYCHRL").

2.      At all relevant times, COMPASS GROUP employed more than four employees and constituted an "employer" within the meaning of New York Executive Law, § 292(5).

3.      MS. VICENTE is a female, suffers from a disability, and is a member of a protected class.

## JURISDICTION AND VENUE

4.        The Court has supplemental jurisdiction over PLAINTIFF'S related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as this action involves diversity of citizenship and the amount in controversy exceeds $75,000.00.

5.        Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

**(a) MS. KARLA VICENTE**

6.        MS. VICENTE at all relevant tines is a resident of Long Island City, Queens County, and the State of New York.

7.        MS. VICENTE is female, suffers from a disability, and is a member of a protected class.

8.        At all relevant times, MS. VICENTE was and still is entitled to the equal benefit and protection of the laws of the City and State of New York, and to established civil rights to which she was and is entitled to under New York law.

9.        In 2013, COMPASS GROUP hired MS. VICENTE as a Butler, which is an on-call position, in Manhattan, New York.  Soon after MS. VICENTE'S role as a Butler, she received a promotion to Captain, a management position, in Manhattan, New York.

10.        In 2017, COMPASS GROUP again promoted MS. VICENTE to Catering Manager for FLIK, in Manhattan, New York.  Ron Pedersen became MS. VICENTE'S supervisor in approximately August 2018.

11.     During MS. VICENTE'S employment with COMPASS GROUP, she has been repeatedly subjected to verbally abusive behavior, failure to accommodate a disability, and unlawful employment practices that violated her rights under the NYCHRL and NYSHR.

12.     COMPASS GROUP did not take any reasonable efforts to protect MS. VICENTE from discrimination or to provide a reasonable accommodation for her disability.  Instead, COMPASS GROUP subjected MS. VICENTE to a hostile work environment, sex and disability discrimination, sexual harassment, and retaliation.

13.     Further, during MS. VICENTE'S employment with COMPASS GROUP, she was repeatedly subjected to verbally abusive, intolerable and unlawful employment practices that violated her rights under the NYCHRL and NYSHRL.

14.      MS. VICENTE reported the unlawful discrimination and sexual harassment that she had to endure at her place of employment.

15.      It is alleged that DEFENDANT engaged in unlawful employment practices and allowed unlawful employment practices to persist, violating MS. VICENTE'S rights under the NYCHRL and NYSHRL.

16.      PLAINTIFF was discriminated and retaliated against by DEFENDANT for opposing discrimination in the workplace, and was terminated from her employment on June 25, 2020.

17.     At all relevant times, MS. VICENTE was and still is entitled to the equal benefit and protection of the laws of the State of New York and the City of New York, and to established civil rights to which she was and is entitled under New York law.

18.     At all times, while COMPASS GROUP terminated MS. VICENTE, her work performance was not only satisfactory, but exceeded expectations as evidenced by the two promotions she received during her tenure with the DEFENDANT.

**(b) COMPASS GROUP USA, INC. d/b/a RESTAURANT ASSOCIATES**

**d/b/a FLIK HOSPITALITY**

19.     At all relevant times herein, COMPASS GROUP USA, INC. is a North Carolina corporation, authorized to do business in the State of New York, having a principal place of business and headquarters at 2400 Yorkmont Rd, Charlotte, North Carolina.

20.     Upon information and belief, COMPASS GROUP operates as a food and support services catering provider.  COMPASS GROUP serves customers worldwide.

21.     RESTAURANT ASSOCIATES ("RA") is a member of COMPASS GROUP USA, INC. RA is an on-site dining management company.

22.     FLIK HOSPITALITY ("FLIK"), is a member of COMPASS GROUP USA, INC - UK and Ireland.  FLIK first launched in the UK in January 2012 and has over 300 associates. FLIK delivers custom dining, hospitality, wellness, and environment services solutions.

23.     Upon information and belief, COMPASS GROUP can sue and be sued.

24.     Throughout MS. VICENTE'S career working at as a catering manager for Warner Media, NBC, CNN, and as a cafe supervisor in Manhattan, New York, *supra*, she was employed by COMPASS GROUP.

25.     At all relevant times, COMPASS GROUP is an employer as defined by § 292 of the New York Executive Law.


**PROCEDURAL BACKGROUND**

26.     This Claim is being filed within three years of the last unlawful discriminatory, retaliatory, and harassing practices alleged herein, pursuant to the NYSHRL and the NYCHRL.

**FACTUAL BACKGROUND**

27.     In 2013, COMPASS GROUP employed MS. VICENTE as a Butler, an on-call position, that involved catering large events for clients like Time Warner and Ernst & Young. Several years later, MS. VICENTE received a promotion, a significant salary raise, and became a Captain.  This was a management position.

28.     At all relevant times, COMPASS GROUP was and still is an employer within the meaning of all applicable statutes.

29.     At all relevant times, MS. VICENTE was a qualified employee and performed her work satisfactorily.

30.     On October 24, 2017, MS. VICENTE received yet another promotion.   She switched roles from Captain to Catering Manager for FLIK, which is part of COMPASS GROUP USA, INC.  Under FLIK, MS. VICENTE and her team handled catering events to NBC clients.

31.     While employed with COMPASS GROUP, Luis Perreaux ("Mr. Perreaux") and Ron Pedersen ("Mr. Pederson") supervised MS. VICENTE.

32.     Since the beginning of MS. VICENTE'S employment, she was targeted and harassed by coworkers and her supervisors.  One supervisor, Mr. Pedersen, failed to provide her with a reasonable accommodation for her disability.  On a consistent basis, these coworkers and supervisors made various derogatory and discriminatory comments, in addition to inappropriate remarks.

33.     One instance of sexual harassment occurred shortly after MS. VICENTE began her new position as Catering Manager, her supervisor, Mr. Perreaux, advised her that there was an event that required her to wear business casual attire.

34.     At that event, on or about October 2017, MS. VICENTE wore black pants and a long sleeve shirt underneath a blazer.  During the event, MS. VICENTE, in her capacity as Catering Manager, was required to run back and forth to make sure the event operated smoothly.  At a point, MS. VICENTE began to overheat so she took off her blazer.  Her supervisor, Mr. Perreaux, then

told her that her pants were inappropriate.  He later texted MS. VICENTE "that men preparing food in the kitchen for the event were commenting on her sexuality."  MS. VICENTE told Mr. Perreaux that "this is my body and no matter what I wear everything will fit the same."

35.     On or about October 2017, after the event occurred, Mr. Perreaux began commenting on MS. VICENTE'S work performance.  He pointed out mistakes she made and blamed her for situations that she did not cause during catering events.

36.     On or about September 2018, Mr. Pedersen replaced Mr. Perreaux as MS. VICENTE'S supervisor.

37.      On or about February 2019, Mr. Pedersen, knowing how talented and capable PLAINITIFF was, asked MS. VICENTE to handle responsibilities as a Cafe Manager in the Columbus Circle Cafe, in addition to her current responsibilities as Catering Manager.

38.     MS. VICENTE immediately told Mr. Pedersen that she had a medical condition that prevented her from standing all day and moving around a lot, which, acting as a Cafe Manager at the Columbus Circle Cafe, would entail.

39.     Mr. Pederson ignored MS. VICENTE'S medical condition, and instead asked "if she could handle the job responsibilities as a Catering Manager at Hudson Yards."  PLAINTIFF responded that a Cafe Manager and Catering Manager were two different positions, the latter being an office position where she would be able to sit and perform her job responsibilities.

40.     MS. VICENTE continued to work on her feet and stand all day long, both as a Catering Manager and Cafe Manager.  PLAINTIFF was a cafe manager from approximately February 2019 to April 2019.

41.     In April 2019, MS. VICENTE was moved from Columbus Circle to Hudson Yards. Although she ceased as a cafe manager, her supervisor, Mr. Pedersen continued to ask MS. VICENTE to help the cafe managers.  This was in addition to PLAINTIFF'S own job responsibilities as Catering Manager.  MS. VICENTE continuously attempted to explain to her supervisor that she could not stand all day long due to her medical condition.  In response, Mr.

Pedersen rhetorically asked her coworkers, "what bullshit excuse will [plaintiff] come up with next not to work in the café?"

42.     Mr. Pedersen, knowing that PLAINTIFF could not move around well or stand for long periods of time, failed to provide a reasonable accommodation by continually asking her to assist in the cafe.

43.     In September of 2019, MS. VICENTE provided a reasonable accommodation letter to Mr. Pedersen, describing her ulcerative colitis condition.  Despite this, Mr. Pedersen kept asking the employees PLAINTIFF supervised what time she arrived at work and what time she left.  Mr. Pedersen also began making jokes that PLAINTIFF did not want to help with the cafe, with no mention that she was unable to do so because of her medical condition.

44.     DEFENDANT'S failure to provide a reasonable accommodation to PLAINTIFF continued even after PLAINTIFF proffered a medical note from her doctor and raised protected concerns regarding her ability to work in her current environment, while standing for 50 hours a week at work.

45.     Mr. Pedersen also regularly made inappropriate sexual comments and gestures in MS. VICENTE'S presence, creating a hostile work environment.

46.     On or about November of 2019, MS. VICENTE went into Mr. Pedersen's office to pick a ream of paper off the floor and bent down to do so.  PLAINTIFF saw that Mr. Pedersen was staring at her buttocks.  Mr. Pedersen told plaintiff that she needed to grab more reams of paper off the floor.  PLAINTIFF felt extremely uncomfortable and told him, her supervisor, that she did not want to grab any further reams of paper off the floor.  However, Mr. Pedersen insisted that she bend down and pick up more paper.  As MS. VICENTE continued to pick up the paper, Mr. Pedersen kept staring at her buttocks.  MS. VICENTE left Mr. Pedersen's office feeling violated, humiliated, and sexually harassed.

47.     A few weeks after that incident, Mr. Pedersen approached MS. VICENTE, and, as he talked to her, ran his fingers through her hair, caressingly. MS. VICENTE felt trapped and

traumatized. Because Mr. Pedersen was her supervisor and continued having a work conversation with her, she felt held captive in her workspace. MS. VICENTE was unable to walk away or tell Mr. Pedersen to stop touching her.

48.     As a result of first Mr. Perreaux's behavior, and then, subsequently, Mr. Pederson's relentless and harassing sexual behavior and comments, MS. VICENTE felt ostracized, marginalized, targeted, and discriminated against, being traumatized and singled out because of her medical condition and gender.

49.     Upon information and belief, MS. VICENTE was also subjected to a harassing and hostile environment, and retaliatory conduct for refusing to work as a Cafe Manager.

50.     For instance, on March 13, 2020, Mr. Pedersen excluded MS. VICENTE from a managers' meeting. All managers were invited to attend the meeting except for PLAINTIFF. During the meeting, Mr. Pedersen informed all of the managers that there was an opportunity to work extra weekend shifts instead of being furloughed due to COVID-19. As a result, MS. VICENTE did not have the opportunity to work weekend shifts.

51.     On March 15, 2020, Mr. Pedersen told MS. VICENTE that she was furloughed because all catering business was suspended due to COVID-19. However, CNN, another main client of DEFENDANT, continued to place catering orders throughout the COVID-19 pandemic.

52.     Upon information and belief, DEFENDANT had another employee, who did not require an accommodation, take over the catering manager responsibilities.

53.     On March 16, 2020, MS. VICENTE filed a complaint alleging sexual harassment and discrimination based on disability, gender, and race. Human Resources took no notice of MS. VICENTE'S serious allegations. They did not engage in any meaningful conversation with her regarding the discrimination, hostile work environment, and retaliation she faced daily.

54.     Rather, Human Resources said that they could not help PLAINTIFF because she was furloughed. They would not consider the aforementioned serious complaints until

DEFENDANT reinstated her, and when that time came, MS. VICENTE would have to refile her complaints.

55.     Then, on June 25, 2020, COMPASS GROUP terminated MS. VICENTE'S employment.

56.     Despite terminating MS. VICENTE's employment, DEFENDANT'S other employees continued to manage catering orders and perform the position that PLAINTIFF was terminated from.

57.     COMPASS GROUP has discriminated against MS. VICENTE based on her gender, sex, and disability pursuant to New York Executive Law § 296 and the NYCHRL.

58.     DEFENDANT has retaliated against PLAINTIFF for objecting to the harassment and discrimination, in violation of New York Executive Law § 296 and the NYCHRL.

59.     As a result of the DEFENDANT'S violation of New York Executive Law § 296 and the NYCHRL, PLAINTIFF has suffered damages including, but not limited to, lost past and future income, humiliation, embarrassment, and emotional distress.

60.     PLAINTIFF is seeking all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

61.     As a result of the conduct described herein, DEFENDANT denied PLAINTIFF employment opportunities, and, ultimately, unlawfully discharged PLAINTIFF as result of unlawful retaliation for PLAINTIFF'S complaints about discriminatory conduct and request for accommodation. Due to the willful, malicious, and intolerable nature of the discriminatory actions set forth herein, PLAINTIFF is entitled to an award of punitive damages.

62.     DEFENDANT'S unlawful conduct was knowing, malicious, willful and wanton,

and/or showed a reckless disregard for PLAINTIFF'S protected rights, in whole or in part, with the full knowledge of the DEFENDANT. DEFENDANT'S discriminatory conduct, sexual harassment, and failure to accommodate PLAITNIFF'S disability has caused, and continues to cause, PLAINTIFF to suffer substantial economic and non-economic damages, as well as severe mental anguish, emotional distress, and physical distress.

## FIRST CLAIM
## (DISABILITY DISCRIMINATION IN VIOLATION OF NYCHRL)

63.        PLAINTIFF repeats, realleges, and incorporates each and every allegation contained in the paragraphs above as more fully set forth herein.

64.        The acts which constitute and form this cause of action were perpetrated upon PLAINTIFF while she was in the course of her employment with COMPASS GROUP and while she was protected under the NYCHRL because of her disability.

65.        PLAINITFF at all relevant times herein, was a member of a protected class under the NYCHRL because she is and was suffering from ulcerative colitis at the time of her employment with COMPASS GROUP.

66.        Plaintiff, given her numerous promotions, requests to take on additional work that demonstrates her skills and exemplary experience, is qualified for her position and performs her duties in that position in a satisfactory manner and is in a position to continue to do so as well as she does now.

67.        On a continuous basis during PLAINTIFF'S employment with COMPASS GROUP, PLAINTIFF sought that her supervisors accommodate her as a result of her ulcerative colitis, seeking that she have a desk and not be expected to stand and move around for 50 hours a week.

68.        DEFENDANT had notice of PLAINTIFF'S disability, should have known of PLAINTIFF'S disability, and was informed of PLAINTIFF'S disability.

69.      PLAINTIFF was capable of performing the essential functions of her job with reasonable accommodations.

70.      After PLAINTIFF sought accommodations for her disability, DEFENDANT thereafter retaliated against PLAINTIFF for seeking the accommodation.

71.      Given the above conduct, there is a strong inference that DEFENDANT violated the NYCHRL, by discriminating against PLAINTIFF based on her disability or perceived disability.

72.      DEFENDANT enabled and condoned the disability discriminatory behavior on the part of PLAINTIFF'S supervisors and refused to take any action to prevent or remedy discriminatory conduct.

73.      The facts alleged herein constitute unlawful discrimination against PLAINTIFF by DEFENDANT, based on PLAINTIFF'S disability, in violation of Chapter 1, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a)("the New York City Human Rights Law"), which, *inter alia*, states that:

> **It shall be unlawful discriminatory practice…[f]or an employer or agent thereof, because of the actual or perceived… disability…of and person…** to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment (emphasis added).

74.      As a direct and proximate result of DEFENDANT'S violation of the NYCHRL, the DEFENDANT is liable to PLAINTIFF pursuant to §8-502(a) of said statute for "damages including punitive damages," and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," based on the lodestar method, as has been judicially established and accepted as a means of calculating attorney's fees, when they are properly available under the law, or as they are here, and for pre-judgment interest.

75.     PLAINTIFF has been humiliated, demeaned and degraded, all of which has been caused by the DEFENDANT'S unlawful conduct due to discrimination based on PLAINTIFF'S disability, in violation of PLAINTIFF'S human rights.

76.     As a direct and proximate result of DEFENDANT'S conduct complained of herein, and as alleged in this cause of action, as well as the conduct set forth in this Complaint, PLAINTIFF has suffered damages, injuries and losses, both actual and prospective, which include damage to her career, psychological damage, and the emotional pain and suffering PLAINTIFF has been caused to suffer, and the impact upon the quality of life and her well-being.

77.     The acts of the DEFENDANT was egregious and committed with reckless indifference in the face of a perceived risk that its actions would violate PLAINTIFF'S protected rights under the NYCHRL, so that, in addition to damages inflicted upon PLAINTIFF and in addition to all the other measures of relief to which PLAINTIFF may be properly entitled herein, the DEFENDANT should also be required to pay punitive damages for its discriminatory conduct, in order to deter the DEFENDANTS and others similarly situated from engaging in such conduct in the future.


## SECOND CLAIM
## (DISABILITY DISCRIMINATION IN VIOLATION OF THE NYSHRL)

78.     PLAINTIFF repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

79.     The aforesaid actions and/or omissions by the DEFENDANT violated the NYSHRL, which prohibits discrimination and retaliation based upon disability in employment.

80.     As a direct and proximate result of the DEFENDANT'S conduct complained of herein, and as alleged in this cause of action, as well as the conduct set forth in this Complaint, PLAINTIFF has suffered damages, injuries and losses, both actual and prospective, which include

damage to her career, psychological damage, and the emotional pain and suffering PLAINTIFF

has been caused to suffer, and the impact upon the quality of life and her well-being.

81.     The acts of the DEFENDANT was egregious and committed with reckless

indifference in the face of a perceived risk that its actions would violate PLAINTIFF'S protected

rights under the NYSHRL, so that, in addition to damages inflicted upon PLAINTIFF and in

addition to all the other measures of relief to which PLAINTIFF may be properly entitled herein,

the DEFENDANT should also be required to pay punitive damages for its discriminatory conduct,

in order to deter the DEFENDANT and others similarly situated from engaging in such conduct in

the future.

**THIRD CLAIM**
**(SEX DISCRIMINATION IN VIOLATION OF NYCHRL)**

82.     PLAINTIFF repeats, realleges, and incorporates each and every allegation

contained in the paragraphs above as more fully set forth herein.

83.     The acts which constitute and form this cause of action were perpetrated upon

PLAINTIFF while she was in the course of her employment with COMPASS GROUP and while

she was protected under the NYCHRL because of her gender.

84.     PLAINITFF at all relevant times herein, was a member of a protected class under

the NYCHRL because she identifies herself as of the female gender at the time of her employment

with COMPASS GROUP.

85.     Plaintiff, given her numerous promotions, requests to take on additional work that

demonstrates her skills and exemplary experience, is qualified for her position and performs her

duties in that position in a satisfactory manner, and is in a position to continue to do so as well as she does now.

86.     Given the relentless and harassing sexual behavior and comments to PLAINTIFF by her supervisors during her tenure at COMPASS GROUP, including, but not limited to PLAINTIFF'S supervisor, Mr. Pederson, forcing PLAINTIFF to bend down so he could stare at her buttocks, and, on another occasion caressing her hair, and PLAINTIFF'S supervisor, Mr. Perreaux's, offensive comments regarding PLAINTIFF'S clothes and sexuality, PLAINTIFF felt ostracized, marginalized, targeted, and discriminated against, being traumatized and singled out because of her gender.  Thus, there is a clear inference that the actional basis for PLAINTIFF'S termination was unlawful gender and sex discrimination.

87.     The facts contained herein constitute unlawful discrimination against PLANTIFF by the DEFENDANT, based on MS. VICENTE'S gender and sex, in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a)("New York City Human Rights Law"), which, *inter alia*, states that:

> "**It shall be unlawful discriminatory practice... [f]or an employer or an employee or agent thereof, because of the...gender...of any person**...to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment" (emphasis added).

88.     As a direct and proximate result of DEFENDANT'S violation of the New York City Human Rights Law, DEFENDANT is liable to PLAINTIFF for "damages including punitive damages," and for "costs and reasonable attorney's fees," based on the lodestar method, as has been judicially established and accepted as a means of calculating attorney's fees, when they are properly available under the law, as they are here, and for pre-judgment interest.

89.     As a direct and proximate result of DEFENDANT'S discriminatory conduct complained of herein, PLAINTIFF has suffered damages, injuries and losses, both actual and prospective, which include the irreparable loss of income for the immediate future, damage to her

career and the emotional pain and suffering.

90.     The acts perpetrated on PLAINTIFF were committed by DEFENDANT with reckless indifference in the face of a perceived risk that its actions would violate PLAINTIFF'S protected rights under the New York City Human Rights Law, so that, in addition to the damages inflicted upon PLAINTIFF and in addition to all other measures of relief to which PLAINTIFF may be properly entitled herein, the DEFENDANT should also be required to pay punitive damages for its discriminatory conduct in order to deter DEFENDANT and others similarly situated from engaging in such conduct in the future.

## FOURTH CLAIM

## (SEX DISCRIMINATION IN VIOLATION OF THE NYSHRL)

91. PLAINTIFF repeats, realleges, and incorporates each and every allegation contained in the paragraphs above as more fully set forth herein.

92.     The acts which constitute and form this cause of action were perpetrated upon PLAINTIFF while she was in the course of her employment with COMPASS GROUP and while she was protected under the NYSHRL because of her gender.

93.     PLAINITFF at all relevant times herein, was a member of a protected class under the NYSHRL because she identifies herself as of the female gender at the time of her employment with COMPASS GROUP.

94.     Plaintiff, given her numerous promotions, requests to take on additional work that demonstrates her skills and exemplary experience, is qualified for her position and performs her duties in that position in a satisfactory manner, and is in a position to continue to do so as well as she does now.

95.     Given the relentless and harassing sexual behavior and comments to PLAINTIFF by her supervisors during her tenure at COMPASS GROUP, including, but not limited to PLAINTIFF'S supervisor, Mr. Pederson, forcing PLAINTIFF to bend down so he could stare at

her buttocks, and, on another occasion caressing her hair, and PLAINTIFF'S supervisor, Mr. Perreaux's, offensive comments regarding PLAINTIFF'S clothes and sexuality, PLAINTIFF felt ostracized, marginalized, targeted, and discriminated against, being traumatized and singled out because of her gender.  Thus, there is a clear inference that the actional basis for PLAINTIFF'S termination was unlawful gender and sex discrimination.

96.     The facts contained herein constitute unlawful discrimination against PLANTIFF by the DEFENDANT, based on MS. VICENTE'S gender and sex, in violation of the NYSHRL.

97.     As a direct and proximate result of DEFENDANT'S violation of the New York State Human Rights Law, DEFENDANT is liable to PLAINTIFF for "damages including punitive damages," and for "costs and reasonable attorney's fees."

98.     As a direct and proximate result of DEFENDANT'S discriminatory conduct complained of herein, PLAINTIFF has suffered damages, injuries and losses, both actual and prospective, which include the irreparable loss of income for the immediate future, damage to her career and the emotional pain and suffering.

99.     The acts perpetrated on PLAINTIFF were committed by DEFENDANT with reckless indifference in the face of a perceived risk that its actions would violate PLAINTIFF'S protected rights under the New York State Human Rights Law, so that, in addition to the damages inflicted upon PLAINTIFF and in addition to all other measures of relief to which PLAINTIFF may be properly entitled herein, the DEFENDANT should also be required to pay punitive damages for its discriminatory conduct in order to deter DEFENDANT and others similarly situated from engaging in such conduct in the future.

**FIFTH CLAIM**
**(HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE NYCHRL)**

100.     PLAINTIFF repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

101.     The aforesaid actions of the DEFENDANT substantially interfered with the employment of the PLAINTIFF and created an intimidating, hostile, and offensive work environment for the Plaintiff based on her disability and gender, in violation of the NYCHRL.

102.     As a result of the DEFENDANT'S violations of the NYCHRL, PLAINTIFF suffered and continues to suffer economic losses, mental anguish, physical injury, pain and suffering, humiliation, trauma, and other losses.

103.     DEFENDANT failed and/or refused to protect PLAINTIFF from the aforesaid sexual harassment and/or abate the aforesaid sexual harassment and instead, permitted her supervisors to remain in their positions while directing the victim, PLAINTIFF, of the aforesaid harassment to endure the hostile work environment.

104.     After PLAINTIFF complained that she was being harassed, the DEFENDANT failed and/or refused to protect PLAINTIFF from the aforesaid harassment and/or abate the aforesaid harassment.

105.     DEFENDANT'S conduct created a hostile work environment, which was so severe as to alter the conditions of PLAINTIFF'S employment. Her supervisors, Mr. Perreaux and Mr. Pederson participated in the harassment of the PLAINTIFF and acted with discrimination and retaliation of PLAINTIFF in their conduct discussed above.

106.     Mr. Perreaux and Mr. Pederson's conduct created a hostile work environment, which was so severe as to alter the conditions of PLAINTIFF'S employment.

107.     PLAINTIFF demands the attorneys' fees incurred by the PLAINTIFF in this action.

108.     DEFENDANT'S actions were performed based on the wanton, willful, and gross misconduct of the DEFENDANT in an amount to be determined by the jury sufficient to deter similar conduct.

**SIXTH CLAIM**
**(HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE NYSHRL)**

109.     PLAINTIFF repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

110.     The aforesaid actions of the DEFENDANT substantially interfered with the employment of the PLAINTIFF and created an intimidating, hostile, and offensive work environment in violation of the NYSHRL.

111.     PLAINTIFF demands the attorneys' fees incurred by the PLAINTIFF in this action.

**SEVENTH CLAIM**
**(RETALIATION IN VIOLATION OF THE NYCHRL)**

112.     PLAINTIFF repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

113.     On June 25, 2020, the DEFENDANT furloughed and then terminated PLAINTIFF'S employment and filled her position with an employee she had previously worked with, in retaliation for PLAINTIFF objecting to and opposing disability and sex discrimination, and complaints that she made to Human Resources regarding sexual harassment and a hostile work environment.

114.     As a direct and proximate result of the DEFENDANT'S unlawful employment practices, including, but not limited to, PLAINTIFF'S furlough and termination, Plaintiff has lost and will continue to lose substantial income including, but not limited to, wages, equity, and other benefits due to her.

115.     Further, as a direct result of the DEFENDANT'S unlawful employment practices, PLAINTIFF has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in physical illness and severe emotional stress.

116.     As a further and proximate result of the DEFENDANT'S unlawful employment practices, PLAINTIFF has suffered extreme mental anguish, physical injury, outrage, severe anxiety about her future and her ability to support herself, harm to her employability and earning capacity, painful embarrassment among her friends and co-workers, damage to her good reputation, disruption of her personal life and loss of enjoyment of the ordinary pleasures of everyday life.

117.     Because the DEFENDANT'S actions were performed with malice and without justification or excuse, PLAINTIFF is entitled to punitive damages in an amount to be determined at trial.

## EIGHTH CLAIM

## (RETALIATION IN VIOLATION OF THE NYSHRL)

118.     PLAINTIFF repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

119.     The foregoing acts and/or omissions by the DEFENDANT'S violated the NYSHRL which prohibits retaliation in employment. On June 25, 2020, the DEFENDANT furloughed and then terminated PLAINTIFF'S employment and filled her position with an employee she had previously worked with, in retaliation for PLAINTIFF objecting to and opposing disability and sex discrimination, and complaints that she made to Human Resources regarding sexual harassment and a hostile work environment.

120.     The aforesaid actions of the DEFENDANT'S substantially interfered with the employment of PLAINTIFF and created an intimidating, hostile, and offensive work environment in violation of the NYSHRL.

121.     PLAINTIFF demands the attorneys' fees incurred by the PLAINTIFF in this action.

**NINTH CLAIM**

**(RETALIATION IN VIOLATION OF THE NYCHRL FOR FAILURE TO ACCOMODATE)**

122.     PLAINTIFF repeats, realleges, and incorporates each and every allegation contained in the paragraphs above as more fully set forth herein.

123.     The acts that constitute and form this cause of action were perpetrated upon PLAINTIFF while she was in the course of her employment with COMPASS GROUP and while she was protected under the New York City Human Rights Law because of her request for a reasonable accommodation due to ulcerative colitis, seeking that she have a desk and not be expected to stand or move around for 50 hours a week.

124.     Up to and including the time of the wrongful and unlawful discrimination alleged herein, including her retaliatory termination, which was an adverse employment action, PLAINTIFF was fully qualified for her position and performed her duties in that position in a satisfactory fashion and was able to continue doing so.

125.     The facts contained herein constitute unlawful discrimination against PLAINTIFF by DEFENDANT'S, based on her disability and her request for accommodation, in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(22)(a)("New York City Human Rights Law").

126.     As a direct and proximate result of DEFENDANT'S violation of the New York City Human Rights Law, the DEFENDANT is liable to PLAINTIFF pursuant to §8-502(a) of said statute for "damages including punitive damages," and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," based on the lodestar method, as has been judicially established and accepted as a means of calculating attorney's fees, when they are properly available under the law, as they are here, and for pre-judgment interest.

127.     As a direct and proximate result of the DEFENDANT'S discriminatory conduct complained of herein, PLAINTIFF has suffered damages, injuries and losses, both actual

and prospective, which include the irreparable loss of income for the immediate future, damage to her career and the emotional pain and suffering.

128.     The acts perpetrated on PLAINTIFF were committed by the DEFENDANT'S with reckless indifference in the face of a perceived risk that its actions would violate PLAINTIFF'S protected rights under the New York City Human Rights Law, so that, in addition to the damages inflicted upon PLAINTIFF and in addition to all other measures of relief to which PLAINTIFF may be properly entitled herein, the DEFENDANT'S should also be required to pay punitive damages for its discriminatory conduct in order to deter the DEFENDANT'S, and others similarly situated from engaging in such conduct in the future.

## TENTH CLAIM

## (RETALIATION IN VIOLATION OF THE NYCHRL FOR FAILURE TO ACCOMODATE)

129.     PLAINTIFF repeats, realleges, and incorporates each and every allegation contained in the paragraphs above as more fully set forth herein.

130.     The acts that constitute and form this cause of action were perpetrated upon PLAINTIFF while she was in the course of her employment with COMPASS GROUP and while she was protected under the New York State Human Rights Law because of her request for a reasonable accommodation due to ulcerative colitis, seeking that she have a desk and not be expected to stand or move around for 50 hours a week.

131.     Up to and including the time of the wrongful and unlawful discrimination alleged herein, including her retaliatory termination, which was an adverse employment action, PLAINTIFF was fully qualified for her position and performed her duties in that position in a satisfactory fashion and was able to continue doing so.

132.     The facts contained herein constitute unlawful discrimination against PLAINTIFF by DEFENDANT'S, based on her disability and her request for accommodation, in violation of the NYSHRL.

133.     As a direct and proximate result of DEFENDANT'S violation of the NYCHRL, the DEFENDANT is liable to PLAINTIFF for "damages including punitive damages," for "costs and reasonable attorney's fees."

134.     As a direct and proximate result of the DEFENDANT'S discriminatory conduct complained of herein, PLAINTIFF has suffered damages, injuries and losses, both actual and prospective, which include the irreparable loss of income for the immediate future, damage to her career and the emotional pain and suffering.

135.     The acts perpetrated on PLAINTIFF were committed by the DEFENDANT'S with reckless indifference in the face of a perceived risk that its actions would violate PLAINTIFF'S protected rights under the New York State Human Rights Law, so that, in addition to the damages inflicted upon PLAINTIFF and in addition to all other measures of relief to which PLAINTIFF may be properly entitled herein, the DEFENDANT'S should also be required to pay punitive damages for its discriminatory conduct in order to deter the DEFENDANT'S, and others similarly situated from engaging in such conduct in the future.

### **PRAYER FOR RELIEF**

**WHEREFORE**, PLAINITFF prays that the Court enter judgment in her favor and against DEFENDANT, containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of the DEFENDANT complained of herein violate the laws of the United States and the State of New York;

B.     An injunction and order permanently restraining DEFENDANT from engaging in

such unlawful conduct;

C.      An order directing DEFENDANT to place PLAINTIFF in the position they would have occupied but for DEFENDANT'S retaliatory treatment and otherwise unlawful conduct, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect her employment and personal life;

D.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate PLAINTIFF for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

E.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate PLAINTIFF for all non-monetary and/or compensatory damages, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and physical suffering, and emotional distress;

F.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate PLAINTIFF for harm to her professional and personal reputation and loss of career fulfillment;

G.      An award of damages for any and all other monetary and/or non-monetary losses suffered by PLAITNIFF in an amount to be determined at trial, plus prejudgment interest;

H.      An award of punitive damages;

I.      An award of costs that PLAINTIFF has incurred in this action, including, but not limited to, expert witness fees, as well as PLAINTIFF'S reasonable attorneys' fees and costs to the fullest extent permitted by law; and

J.      Such other and further relief as the Court may deem just and proper.

### JURY DEMAND

PLAINTIFF hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: October 7, 2022
New York, New York

**BRUSTEIN LAW PLLC**

By:_____*/s/ Evan Brustein*_____
    Evan Brustein, Esq.
    Brustein Law PLLC
    Attorneys for Plaintiff
    299 Broadway, 17th Floor
    New York, New York 10007
    (917) 769 -8748
    evan@brusteinlaw.com

    Jeffrey Risman, Esq.
    299 Broadway, 17th Floor
    New York, New York 10007
    T. (212) 223-6400
    F. (212) 233-6406
    jrisman@risman-law.com